Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS with minor modifications the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matter of law the following which were entered into by the parties in a Pre-Trial Order, dated November 19, 1996, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff was employed by defendant-employer at all relevant times.
2. All parties are bound by and subject to the North Carolina Workers' Compensation Act.
3. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times.
4. Plaintiff timely filed an Industrial Commission Form 18 and there are no questions of statute of limitation, timeliness or jurisdiction.
5. At all relevant times, plaintiff earned an average weekly wage of $266.00.
6. The parties stipulated into evidence without further authentication or verification as Exhibit 1 the following 176 pages of documents:
— Perdue Medical Documents;
— Roanoke-Chowan Hospital records;
— Physical Therapy Progress notes;
— Dr. Leonard Reaves records;
— Bertie Rural Health records;
— East Carolina Neurology records;
— Southeastern Neurology records;
— Dr. Thomas Gualtieri records;
— Maryview Clinic records;
— Vocational Rehabilitation records;
— Pitt Memorial Hospital records;
— Pitt Chronic Pain Evaluation records; and,
— Responses to Interrogatories.
 ************* RULINGS ON EVIDENTIARY MATTERS
All objections raised during the deposition of Dr. Thomas Gualtieri are ruled upon in accordance with the law and Opinion and Award rendered in this matter.
 *************
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the deputy commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-six year old woman, born April 29, 1960 and holding a high school degree. Prior to beginning work with defendant-employer, plaintiff primarily engaged in farming activities with her parents. On July 24, 1983, plaintiff became employed with defendant-employer as a poultry processor in its Lewiston facility.
2. On May 18, 1994, plaintiff was working in the Weldotron department where trays of chicken are wrapped in cellophane by machine. On that day she was holding trays of drumsticks in her hand. As she was walking forward, she tripped on a basket and landed on her left side, hitting the right side of her head on the concrete floor. Plaintiff was wearing a hard hat at the time.
3. Plaintiff was immediately taken to the Roanoke-Chowan Hospital Emergency Room. Plaintiff reported that she had fallen, hitting her left side and the right side of her head. Medical records indicated that plaintiff had not lost consciousness as a result of the fall, but had a headache and was complaining of pain in her left leg and left rib area. On that day x-rays were taken of plaintiff's chest, left ribs and cervical spine. These x-rays were negative. Plaintiff was given Motrin and released.
4. On May 19, 1994, plaintiff presented to Dr. Robert B. Hansen, a neurologist, complaining of a bruised rib cage area, and Dr. Hansen confirmed that plaintiff had a bruise on the left side of her chest just below her armpit. At that time plaintiff did not complain of any head pain. Dr. Hansen kept plaintiff out of work for a couple of days for her soft tissue bruise to her left rib area and allowed her to return to work on Monday.
5. Plaintiff wanted another opinion regarding her ability to return to work and on May 24, 1994 presented to Dr. Leonard Reaves III of Cashie Medical Center in Windsor. Plaintiff presented complaining of pain in the left side of her chest as well as neck and right shoulder pain resulting from her fall at work on May 18, 1994. Dr. Reeves continued plaintiff on Motrin and released the plaintiff to return to work at light duty for one week to ten days. Plaintiff was directed to avoid bending, stooping, lifting and pulling. Plaintiff did not complain of head pain.
6. On May 25, 1994 plaintiff returned to light duty work for defendant-employer.
7. On June 14, 1994 and June 28, 1994, plaintiff reported to defendant-employer's Wellness Center complaining of headaches. This was plaintiff's first mention of head pain since the date of her fall. As a result of these complaints, plaintiff was examined by Dr. Colin Jones and returned to work. A CT scan of plaintiff's head was taken on June 29, 1994 and was normal.
8. Plaintiff's complaints of headaches persisted, and on July 13, 1994, plaintiff saw Dr. Brenda Waller, a physiatrist at the Rehabilitation Clinic of Pitt Regional Hospital. Plaintiff presented to Dr. Waller complaining of pain occasionally in her left side, low back pain, neck pain and constant left-sided head pain. At that time plaintiff reported that immediately following her fall on May 18, 1994, she could not move, started shaking and could not open her eyes; however, she did not lose consciousness, did not experience vomiting or nausea and did not initially suffer headaches. Plaintiff was diagnosed with post-concussive syndrome and a back strain, was taken out of work to participate in physical therapy and had a Functional Capacity Evaluation. Plaintiff again saw Dr. Waller on August 3, 1994, continuing to complain of headaches and left side pain and was continued on daily physical therapy with myofascial release techniques to prevent tension headaches.
9. Plaintiff returned to Pitt Regional Rehab Clinic on August 24, 1994 and was seen by Dr. John E. Eisele. Plaintiff complained that noise in the work environment bothered her. Since plaintiff had not benefited from three months of five days a week physical therapy, her physical therapy was decreased to three times a week. She was referred for MMPI testing and a psychological evaluation and she was directed to return to work on September 5, 1994, starting at four hours per day. Plaintiff again saw Dr. Eisele on September 14, 1994. Plaintiff had attempted to return to work, but, after two hours, complained of severe headaches and dizziness and left. Dr. Eisele recommended that plaintiff discontinue physical therapy and referred her for a neurological examination.
10. On October 6, 1994, plaintiff was again seen by Dr. Robert Hansen, a neurologist. At that time plaintiff was complaining of low back pain and headaches since her fall in May of 1994. Plaintiff was diagnosed as having post-traumatically activated migraine syndrome, meaning headaches that began after an injury. This is different from post-traumatic headaches, which are headaches that relate to the injury. Plaintiff again saw Dr. Hansen on October 20, 1994 and indicated that she could not return to work due to the noise and stress level at work.
11. Plaintiff was subsequently referred by Dr. Hansen to the Maryview Hospital Headache Management Unit which she entered on January 16, 1995 and from which she was discharged January 20, 1995. Plaintiff was diagnosed with chronic tension headaches and musculoskeletal low back pain. Plaintiff's symptoms improved during her stay at Maryview, but following her release, she reported to Dr. Hansen on February 2, 1995 that her pain had come back as before.
12. On February 2, 1995, Dr. Hansen returned plaintiff to work in a grading position outside her regular job in the Weldotron department, where it would be less noisy. By March 2, 1995, plaintiff indicated that she had not yet returned to work, and Dr. Hansen again recommended that she return to work. Plaintiff did return to work following this visit.
13. Following her return to work, plaintiff reported to defendant-employer's Wellness Center on March 23, 1995, complaining of continued headaches, back pain and dizziness. Plaintiff was able to do the jobs assigned, however.
14. On April 4, 1995, plaintiff was packing thighs on the grading line when she felt dizzy and fell hitting the floor. Plaintiff was taken to the Wellness Center and told to lie down until she felt that she could return to work. Plaintiff did not return to work that day and went home early.
15. Plaintiff returned to Dr. Hansen on April 13, 1995. Dr. Hansen did not find any evidence of injury to plaintiff's head on that date. At that time Dr. Hansen did not feel that the plaintiff was disabled by her low back pain or headaches and would not write plaintiff out of work. Dr. Hansen recommended physical therapy which the plaintiff could complete at defendant-employer's Wellness Center. Plaintiff then sought a second opinion from Dr. Watford, a family practitioner at Bertie County Rural Health Associates, who also recommended physical therapy.
16. On May 18, 1995, plaintiff returned to Dr. Hansen complaining of headaches. Dr. Hansen diagnosed plaintiff with myofascial pain and did not find any reason why plaintiff should not return to work, although plaintiff was no longer working. Plaintiff consulted Dr. Watford again on May 22, 1995 and Dr. Watford continued the plaintiff out of work while she participated in physical therapy. Plaintiff concluded her physical therapy on June 2, 1995 and Dr. Watford returned her to work as of June 5, 1995.
17. Following this release to work, plaintiff returned to work, but would only work approximately five to six hours per week. Shortly after reporting to work, plaintiff would leave for the Wellness Center, and ultimately return home.
18. Plaintiff continued working in this manner until September 13, 1995 when she consulted Dr. Meredith Anthony, a family physician, who wrote her out of work due to her complaints of headaches, dizziness and blurred vision.
19. Plaintiff was informed by her employer that Dr. Anthony was not her treating physician and that her absences were not excused as her treating physicians had cleared her to return to work. Thereafter, plaintiff continued her refusal to return to work.
20. Subsequently, plaintiff was referred to Dr. Arvo Kanna, a neurologist in Greenville, for treatment of headaches. Dr. Kanna examined plaintiff on October 26, 1995 and diagnosed her with chronic tension headaches, possibly migraines and chronic low back pain. A second MMPI was performed on plaintiff which was also invalid. Plaintiff was again seen by Dr. Kanna on December 6, 1995 and January 4, 1996. Dr. Kanna opined that if plaintiff's symptoms were related to her prior trauma, they should have improved and that plaintiff should not suffer any permanent disability as a result of her accident. Dr. Kanna released plaintiff to the care of Dr. Anthony, the family practitioner who had referred her.
21. Dr. Robert Hansen, plaintiff's treating neurologist, did not believe that plaintiff had suffered a head injury; but was of the opinion that if plaintiff had suffered a head injury, it was not of a nature severe enough to cause the symptoms of which plaintiff was complaining. Dr. Hansen was of the opinion that plaintiff's head coming to rest on the floor as a result of the fall would not be of sufficient force to cause plaintiff's continued symptoms. Moreover, Dr. Hansen had seen plaintiff the day following her fall at which time plaintiff had not complained of any head pain. Dr. Hansen was of the opinion that as of May 18, 1995 when he last saw plaintiff, she was able to return to work.
22. Consistent with the medical history plaintiff presented to Dr. Hansen was the history plaintiff presented at the emergency room following her May 18, 1994 fall. While plaintiff had mentioned that she had hit the right side of her head and complained of having a headache, she did not report a loss of consciousness and did not exhibit symptoms of double vision, nausea, vomiting, bruising, or tenderness. Also, the emergency room physicians did not find plaintiff's complaints sufficient to perform a head x-ray even though chest and back x-rays were performed at that time.
23. Plaintiff's medical records were evaluated by Dr. Thomas Gualteri, a neuropsychiatrist in Chapel Hill who specializes in brain injury cases. Dr. Gualteri found no evidence of brain injury. Dr. Gualteri was of the opinion that even if plaintiff's history of the fall were believed, plaintiff did not suffer a brain injury as she did not suffer a loss of consciousness, she did not exhibit neurological findings consistent with brain injury; she did not suffer from a scalp laceration, bump or change in mental state and the emergency room personnel did not find her complaints and history sufficient to conduct a head x-ray. Dr. Gualteri was of the opinion that even if plaintiff's history of the fall were correct and, assuming that plaintiff hit her head, plaintiff might suffer some headache, but the resulting headache would not be persistent and disabling, even if plaintiff had suffered a small or minor concussion. However, there is no evidence that plaintiff suffered a concussion.
24. Although Dr. Anthony has continued to keep plaintiff out of work due to her headaches and back pain, the opinions of Dr. Hansen and Dr. Gualteri on plaintiff's ability to work and degree of disability are given more weight.
25. On May 18, 1994, plaintiff suffered an injury by accident, arising out of and in the course of her employment as a result of a fall. Defendant has not filed an I.C. Form 60 or Form 21 admission of liability for plaintiff's injury from her fall.
26. No evidence was presented as to which dates plaintiff was paid temporary total disability, temporary partial disability or dates for which plaintiff received no compensation or partial compensation.
27. Plaintiff has failed to prove by the greater weight of the evidence that the headaches from which she suffers and which have allegedly disabled her from working resulted from her injury by accident or from her employment with defendant-employer. As a result of her fall, plaintiff suffered a back strain and neck and shoulder pain which caused her to miss time from work.
 *************
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On May 18, 1994, plaintiff suffered a compensable injury by accident arising out of and in the course of her employment with defendant-employer causing back strain and neck and shoulder pain. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has failed to prove by the greater weight of the evidence that any disability caused by her headache problems is a direct and proximate result of her compensable injury by accident arising out of and in the course of her employment with defendant-employer on May 18, 1994. N.C. Gen. Stat. § 97-1 et.seq.
3. No determination is made herein concerning whether plaintiff has been paid all compensation to which she is entitled for her compensable back, neck and shoulder injury. Additional evidence is needed to determine this issue.
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim for compensation for headaches or a work-related head injury must be, and the same is, DENIED.
2. This case is REMANDED to a deputy commissioner for determination of the period of temporary total and temporary partial disability compensation (if any) to which plaintiff is entitled and whether plaintiff has sustained any permanent partial disability to her back, neck and shoulder as a result of her compensable fall on May 18, 1994.
3. Defendant shall pay the costs. An expert witness fee is hereby approved in the amount of $220.00 for Dr. Robert Hansen in connection with his deposition taken January 9, 1997, and a fee of $300.00 is hereby approved for Dr. C. Thomas Gualtieri in connection with his deposition taken December 17, 1996. Defendant shall pay the expert witness fees.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
________________________ LAURA K. MAVRETIC COMMISSIONER
________________________ RENÉE C. RIGGSBEE COMMISSIONER